FILED
**United States Court of Appeals**
**Tenth Circuit**

**August 12, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LUCRECIA CARPIO HOLMES,

        Plaintiff - Appellant,

v.

COLORADO COALITION FOR THE
HOMELESS LONG TERM
DISABILITY PLAN,

        Defendant - Appellee.

No. 13-1175

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:09-CV-02986-REB-BNB)**

Brian A. Murphy, Lakewood, Colorado, for Plaintiff-Appellant.

Richard N. Bien (Robyn L. Anderson, with him on the brief), Kansas City, Missouri, for
Defendant-Appellee.

Before **KELLY, TYMKOVICH** and **McHUGH**, Circuit Judges.

**McHUGH,** Circuit Judge.

      Plaintiff Lucrecia Carpio Holmes appeals the district court's ruling that her claim

for disability benefits under the Employee Retirement Income Security Act (ERISA) is

barred due to her failure to exhaust administrative remedies. Exercising jurisdiction under

28 U.S.C. § 1291, we affirm.

# I. BACKGROUND

Ms. Holmes is a former employee of the Colorado Coalition for the Homeless (the Coalition) and participated in an employee benefits plan funded, in part, by a disability insurance policy through Union Security Insurance Company (Union Security).[1] The benefits were provided by Union Security under Group Policy 4048742 (the Policy). The benefits plan is subject to the requirements of ERISA.

While employed by the Coalition, Ms. Holmes presented with a number of medical conditions, including breast cancer, cataplexy, apnea, blackouts, diabetes, carpal tunnel syndrome, and neuropathy. As a result, she filed a claim for disability benefits with Union Security on March 10, 2005. Union Security sent written notification to Ms. Holmes on May 27, 2005 that it had denied her claim because she failed to prove she was disabled as defined by the Policy. The denial letter included an explanation of Ms. Holmes's right to internal review of the decision and attached a copy of a Group Claim Denial Review Procedure (the Denial Review Procedure), which describes a two-level review process.

On November 21, 2005, in accordance with the Denial Review Procedure, Ms. Holmes filed a request for review of the denial (the first-level review). Union Security issued a decision on the first-level review 137 days later on April 7, 2006, when it

---

[1] Union Security was formerly known as Fortis Benefits Insurance Company. For convenience, we have replaced references to Fortis Benefits in the relevant documents with references to Union Security.

informed Ms. Holmes in writing that it had affirmed the denial of benefits. Union Security's April 7, 2006, letter contained a second copy of the Denial Review Procedure, which informed Ms. Holmes that she "may request another review of [Union Security's] decision," and that this second-level review is the "final level of administrative review available." Aplt. App. 235–36; 294–97. The Denial Review Procedure further states that if Ms. Holmes's claim is denied "as part of the [second-level review]," she will "have a right to bring a civil action." *Id.* at 236.

Rather than pursuing further administrative remedies at that time, Ms. Holmes took no action for over two years. Then, on April 28, 2008, she filed a civil action against the Colorado Coalition for the Homeless Long Term Disability Plan (the Defendant) in Colorado state court pursuant to ERISA's civil enforcement provisions. *See* 29 U.S.C. § 1132(a)(1)(B). The Defendant was unaware of the lawsuit and the state court entered default judgment against it. Upon learning of the suit, the Defendant removed the action to federal court and moved to have the default judgment set aside. The district court granted the Defendant's motion, holding that Ms. Holmes had not validly served process on it.

The proceedings in the district court continued and both parties sought summary judgment based on the undisputed facts in the Administrative Record. While those cross motions were pending, Ms. Holmes filed a motion to stay decision, reopen discovery, and proceed to trial, if necessary (the discovery motion). The basis of Ms. Holmes's discovery motion was that further discovery was needed to identify which document or set of documents actually constitutes the plan.

3

The district court denied the discovery motion and granted the Defendant's motion for summary judgment. It held Ms. Holmes's claim was barred because she failed to exhaust her administrative remedies by not seeking a second-level review as required by the plan. The court rejected Ms. Holmes's arguments that she should be deemed to have exhausted her administrative remedies because Union Security failed to render a timely decision on her first-level review or because Union Security did not provide notice of the two-level review process as required by ERISA. It concluded that although Union Security did not render a decision until 137 days after Ms. Holmes sought a first-level review, 67 of those days were attributable to Ms. Holmes's delay in providing Union Security with requested medical records. As a result, the district court held Ms. Holmes had forfeited her right to enforce the ERISA deadlines. The district court also held Union Security had complied with the applicable ERISA notice and disclosure requirements.

## II. DISCUSSION

Ms. Holmes claims the district court erred by determining she failed to exhaust her administrative remedies. In addition, she appeals two interlocutory decisions: the district court's order setting aside default judgment against the Defendant and its order denying her discovery motion. Ms. Holmes has not met her burden of adequately briefing her challenges to the interlocutory orders on appeal and we will not consider them further. *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1223 n.6 (10th Cir. 2008) (refusing to consider an argument where appellant failed to "'advanc[e] reasoned argument as to the grounds for the appeal'" (alteration in original) (quoting *Am. Airlines v. Christensen*, 967 F.2d 410, 415 n.8 (10th Cir. 1992))); *Adler v. Wal-Mart Stores, Inc.*,

4

144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . ."); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (stating that "a few scattered" and "perfunctory" statements that failed to frame and develop an issue were insufficient to invoke appellate review); *see also* Fed. R. App. P. 28(a)(9)(A) ("The appellant's brief must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."). Our review is therefore limited to determining the scope of Ms. Holmes's internal review obligations and whether the district court properly granted the Defendant summary judgment based on Ms. Holmes's failure to exhaust those administrative remedies.

This court reviews summary judgment orders de novo, applying the same standards as the district court. *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1201 (10th Cir. 2013). Summary judgment is available "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

According to Ms. Holmes, the undisputed facts of this case show that she, rather than the Defendant, is entitled to summary judgment on the issue of exhaustion. She offers two separate arguments in support. First, she contends she cannot be required to engage in a second-level review before bringing a civil action because such a requirement is not included in the summary plan description (SPD) provided by Union Security to plan participants. Second, and in the alternative, Ms. Holmes argues that even if such a requirement does exist, she should be deemed to have exhausted her administrative

5

remedies due to Union Security's failure to comply with ERISA's timing and notice requirements. We address each of these arguments in turn, beginning with the level of internal review required by the plan.

## A. *Ms. Holmes's Internal Review Obligations*

To determine whether Ms. Holmes was required to pursue a second-level review before she could file a civil action, we must first identify the documents that control her obligations under ERISA. ERISA addresses two categories of documents relevant here, which each serve a different purpose. The first is the plan document, which must specify in writing the basis on which payments are to be made under the plan. 29 U.S.C. § 1102(a)(1), (b)(4). Second, ERISA requires plan administrators to provide participants with a "summary plan description," which must reasonably apprise participants of their rights and obligations under the plan. 29 U.S.C. §§ 1002(21)(A), 1021(a), 1022, 1024. Although the plan documents contain the enforceable terms of the benefit plan, the summary plan description is intended to communicate the contents of the plan in understandable language to participants. *CIGNA Corp. v. Amara*, ___ U.S. ___, 131 S. Ct. 1866, 1877 (2011).

Ms. Holmes argues she cannot be required to engage in a second-level review because the SPD provided by Union Security does not describe a two-level review process. In response, the Defendant asserts that the two-level review process was incorporated into the SPD by reference. The underlying assumption of both arguments is that the enforceability of the two-level review process is dependent upon whether it is

6

part of the SPD. However, this analytical approach is unsound because it is inconsistent with the distinct purposes of the SPD and the plan documents as established by ERISA.

In *Amara*, the Supreme Court clarified that the requirements of an ERISA plan must be based on the terms of the plan document, which do not include the summary plan description in all circumstances.[2] 131 S. Ct. at 1878 ("[S]ummary documents, important as they are, provide communication with beneficiaries *about* the plan, but . . . their statements do not themselves constitute the *terms* of the plan . . . .") (emphasis in original)); *see also US Airways, Inc. v. McCutchen*, ___ U.S. ___, 133 S. Ct. 1537, 1548 (2013) ("The statutory scheme [of ERISA], we have often noted, 'is built around reliance on the face of the written plan documents.'" (quoting *Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83 (1995))). The Supreme Court explained that where the relevant term does not appear in the plan, it is not "necessarily . . . enforce[able] . . . as the terms of the plan itself." *Amara*, 131 S. Ct. at 1877. For example, *Amara* held that a court may not enforce the terms of a summary plan description which conflict with the terms of the plan. *Id.* at 1876–77 (noting that the "statutory language speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them" (alteration and emphasis in

---

[2] The Supreme Court issued *Amara* while this case was pending in the district court. Although Ms. Holmes cited *Amara* below as support for her discovery motion, she did not argue that it affected her requirement to engage in a second level of the internal review. On appeal, neither party has cited *Amara*. Nevertheless, we are bound by its holding in assessing Ms. Holmes's internal review obligations. *See Planned Parenthood of Kan. & Mid-Mo. v. Moser*, 747 F.3d 814, 837 (10th Cir. 2014) (holding that appellate court has power to identify and apply governing law, even when not advanced by the parties).

original) (quoting 29 U.S.C. § 1132(a)(1)(B))). *Amara* did not address the question of when a term that is consistent with the plan, but not contained in it, can be enforced.

Considering that question after *Amara*, this circuit has enforced terms that do not appear on the face of the plan but do not conflict with it when they are authorized by or made part of the plan documents. For example, in *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1131 (10th Cir. 2011), we held that a provision granting discretion to the plan administrator contained only in the summary plan description was enforceable because it did not conflict with the plan and because the summary plan description expressly stated that it was part of the plan. We again enforced terms not contained in the plan in *Foster v. PPG Industries, Inc.*, 693 F.3d 1226, 1239 (10th Cir. 2012). There, we held a participant could not recover amounts his former wife fraudulently withdrew from his stock-ownership plan because he had failed to comply with withdrawal procedures contained only in the summary plan description. We concluded the procedures were enforceable because they did not conflict with the plan document, and because the plan document explicitly referenced them by stating that withdrawals must be "'made in accordance with procedures established by the Administrator.'" *Id.* at 1235. We explained,

> Even if the [summary plan description] did not constitute "terms" of the Plan, the procedures laid out in the [summary plan description] were explicitly referenced in the Plan Document and do not in any way contradict the Plan Documents. A participant who elected to defer withdrawal was required to make those withdrawals "in accordance with procedures established by the Administrator."

*Id.* at 1235 n.5; *see also Kennedy v. Plan Adm'r for DuPont Savings & Inv. Plan*, 555 U.S. 285, 288, 304 (2009) (holding that a plan administrator was entitled to distribute benefits pursuant to information contained in a beneficiary designation form because the plan document required "'[a]ll authorizations, designations and requests concerning the Plan [to] be made by employees in the manner prescribed by the [plan administrator],'" who provided the plan participants with specific beneficiary designation change forms (alterations in original)). These decisions indicate that a term not contained in the plan, which does not conflict with the plan, is enforceable where it is "authorized by, or reflected in" the plan. *Eugene S.*, 663 F.3d at 1131.

Accordingly, the correct analytical framework for determining Ms. Holmes's obligations with respect to internal review begins with an examination of the plan's requirements and then considers the extent to which other non-conflicting terms have been authorized by or reflected in the plan. Applying that analysis here, we first review the plan document and conclude it specifically authorized Union Security to advise Ms. Holmes of further appeal rights, which could include a second-level review. We next determine that Union Security advised Ms. Holmes of her further appeal rights by supplying her with a copy of the Denial Review Procedures. We then consider whether the SPD was made part of the plan and conclude that it was not. Finally, based on the plan and the additional terms authorized by it, we conclude Ms. Holmes was required to seek a second-level review.

### 1.   The Plan Document

We begin our analysis of the internal review procedures provided by the plan with an examination of the terms of the plan. The parties and the district court have identified the Policy as the plan document, and we do so as well. *See US Airways,* 133 S. Ct. at 1543 n.1 (rejecting an attempt to identify the plan documents for the first time on certiorari review and stating that "[b]ecause everyone in this case has treated the language from the summary description as though it came from the plan, we do so as well"). Accordingly, we turn to the language of the Policy to ascertain the plan's review procedures.

The Policy describes the internal review process by setting out the specifics of the first-level review, but noting only the possibility of further appeal rights. It states,

> **Review Procedure**
>
> You must request, in writing, a review of a denial of your claim within 180 days after you receive notice of denial.
>
> . . .
>
> We will review your claim after receiving your request and send you a notice of our decision within 45 days after we receive your request, or within 90 days if special circumstances require an extension. We will state the reasons for our decision and refer you to the relevant portions of the policy. We will also advise you of your further appeal rights, if any.[3]

---

[3] Ms. Holmes argues for the first time on appeal that the phrase "further appeal rights, if any" is ambiguous and therefore should be construed in her favor. Because it is raised for the first time on appeal, we do not consider this argument. *See United States v. Holmes*, 727 F.3d 1230, 1237 (10th Cir. 2013) ("[W]e do not permit new arguments on appeal when those arguments are directed to reversing the district court."); *Hickman v. GEM Ins. Co.*, 299 F.3d 1208, 1213 (10th Cir. 2002) (refusing to consider the argument that an ERISA plan was ambiguous because it was raised for the first time on appeal); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993) ("[V]ague, arguable

Aplt. App. 146, 167 (emphasis omitted). Although the Policy describes only one level of internal review, it allows Union Security to advise the participant of further appeal rights when the decision on a first-level review is communicated to the claimant.

## 2. The Denial Review Procedure

As permitted by the Policy, Union Security advised Ms. Holmes of her further appeal rights. It did so first in its decision denying Ms. Holmes's initial claim for benefits, and second in its decision on Ms. Holmes's first-level review. Each of those denial letters informed Ms. Holmes that a copy of the Denial Review Procedure was enclosed, which described her "rights with respect to [Union Security's] administrative appeals process," and "her right to bring a lawsuit." *Id.* at 233. In turn, the Denial Review Procedure, attached with each letter, explained the applicable time limits for seeking and rendering a decision on review and then clearly described a two-level review process that had to be exhausted before Ms. Holmes could proceed to court.[4] The Denial Review Procedure states, with our emphasis:

---

references to a point in the district court proceedings do not . . . preserve the issue on appeal." (brackets and internal quotation marks omitted)).

[4] In a citation of supplemental authority, Ms. Holmes asserts that because the Denial Review Procedure contains some permissive language, it is insufficient to impose a mandatory second-level internal review. We do not consider this argument because it was not raised before the district court or argued in Ms. Holmes's opening brief. *See Hickman*, 299 F.3d at 1213; *Adler*, 144 F.3d at 679.

11

**Appeal Process**

The following is an explanation of the steps [Union Security] will take in handling your appeal for benefits.

**First Review:** If you request a review of our decision, your claim will be reviewed by an individual not previously involved in the decision to deny your claim. The review will either overturn or uphold the denial. You will be notified of this decision in writing. However, before reaching our decision, it may be necessary to request additional information, an examination, an interview, or other evaluation, or consult with a health care professional or vocational expert regarding your claim.

**Second Review:** *If your claim is denied after your initial request for review, you may request another review of our decision.* Your request for review would then be forwarded to a manager in the Disability Claims area or to the [Union Security] Benefits Disability Claims Appeals Committee. *The decision of that manager or committee is the final level of administrative review available.*

**Right to Bring a Lawsuit**

*If your claim is denied* by the [Union Security] Disability Claims Appeals Committee or Disability Claims Manager *as part of the Second Review* described above, *you have the right to bring a civil action* under section 502(a) of [ERISA].

*Id.* at 235–36.

Although the Denial Review Procedure is more complete than the first-level review described in the Policy, it does not contradict the terms of the Policy. Rather than foreclosing the possibility of a second-level review, the Policy indicates that when Union Security informs a claimant of the decision on a first-level review, it may advise the participant of further appeal rights. When Union Security rendered its decision on Ms. Holmes's first-level review it did just that by including a copy of the Denial Review Procedure, which advised Ms. Holmes of her further rights and that she could pursue a

12

civil action after engaging in that second-level review. Thus, like the "procedures to be established by the administrator" in *Foster*, the Denial Review Procedure is authorized by the plan and enforceable against Ms. Holmes. *See Foster*, 693 F.3d at 1235 n.5; *see also Kennedy,* 555 U.S. at 304 (enforcing the terms of beneficiary designation change forms).

3.     **The SPD**

Rather than focus on the plan terms, Ms. Holmes and Union Security engage on whether the SPD describes a second-level review. In particular, Ms. Holmes points to the fact that the SPD describes only one level of internal review, without also indicating that the decision on that first-level review may include an explanation of her further appeal rights. As discussed, however, the SPD is not necessarily enforceable as the terms of the plan. *See Amara*, 131 S. Ct. at 1877. Here, the Policy—the plan document—does not authorize the review procedures as set forth in the SPD. Although it contains an explicit reference to further appeal rights communicated with the decision on the first-level review, it makes no reference to the appeal rights described in the SPD. Furthermore, unlike the summary plan description in *Eugene S.*, the SPD is not enforceable as part of the plan. To the contrary, the SPD expressly states that it "does not replace or modify the [Policy] in any way. The [Policy] is the contract which sets forth the terms and conditions of the benefits the Plan Sponsor chose to provide in its welfare benefit plan." Aplt. App. 163. As a result, the SPD review procedures are not enforceable as part of the plan.

Because the SPD's review procedures are neither authorized by, nor reflected in the plan, they do not inform our decision of whether Ms. Holmes was required to pursue a second-level review. Although any alleged discrepancies between the review

13

procedures described in the SPD and the plan requirements may be the basis for relief under ERISA's notice and disclosure requirements,[5] the enforceable terms of the plan are governed by the Policy, which is the plan document. The Policy, as supplemented by the authorized Denial Review Procedure, provides for a two-level review process.

## B. Exhaustion of Administrative Remedies

Ms. Holmes engaged in only a first-level review before filing the present action and therefore did not actually exhaust her administrative remedies. Although ERISA contains no explicit exhaustion requirement, courts have uniformly required that participants exhaust internal claim review procedures provided by the plan before bringing a civil action. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, ___ U.S. ___, 134 S. Ct. 604, 610 (2013). Unless Ms. Holmes can establish some exception to the exhaustion requirement, her civil action is barred by her failure to engage in a second-level review.

Generally, a failure to exhaust will be excused in two limited circumstances— when resort to administrative remedies would be futile or when the remedy provided is inadequate. *See McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir. 1998). The Department of Labor added another exception to the exhaustion requirement when it amended the ERISA regulations in 2000 to provide that claimants are "deemed to have exhausted" their administrative remedies if a plan has failed to establish or follow

---

[5] *See* discussion *infra* Part II.B.2.

claims procedures consistent with the requirements of ERISA. *See* 29 C.F.R.

§ 2560.503-1(*l*) (the deemed-exhausted provision).[6]

Ms. Holmes argues she should be deemed to have exhausted her administrative

remedies because the Defendant has failed to establish or follow claims procedures

consistent with ERISA's requirements in two respects. First, Ms. Holmes asserts Union

Security failed to render a decision on her first-level review within the time required by

ERISA. Second, she contends the SPD is not consistent with ERISA's notice and

disclosure requirements because it failed to describe the two-level internal review

process. We are not persuaded by either argument.

## 1.  ERISA's Timing Requirements

In considering Ms. Holmes's argument that the decision on review was untimely,

we first discuss ERISA's provisions governing the time in which a plan administrator

must render a decision on review. We then apply those provisions to the present facts,

rejecting Ms. Holmes's argument that the tolling provision is inapplicable. Ultimately, we

conclude that Union Security's decision on Ms. Holmes's first-level appeal was timely,

and therefore she should not be deemed to have exhausted her administrative remedies on

this basis.

Although the statute itself contains no time limits, ERISA's regulations provide

time restrictions on a plan's administrative review of a participant's claim for benefits.

Two regulations govern a plan administrator's time for rendering a decision on review of

---

[6] The current regulations are applicable to claims filed after 2002. *See* 29 C.F.R. § 2560.503–1(o).

a denial of a claim for benefits. The first is 29 C.F.R. § 2560.503-1(i)(1), "Timing of notification of benefit determination on review" (the timing provision), which requires the plan administrator to notify the claimant of the decision on review "not later than [45] days after receipt of the . . . request for review . . . , unless the plan administrator determines that special circumstances . . . require an extension of time for processing the claim." *Id.*[7] Any such extension shall not exceed 45 days. *Id.* § 2650.503-1 (i)(3)(i).

The second regulation governing the time for review, § 2560.503-1(i)(4), "Calculating time periods" (the tolling provision), dictates how the time periods specified in the timing provision are calculated.[8] The tolling provision stays the running of the limits in the timing provision pending a participant's response to a request for additional information. The tolling provision states,

> For purposes of [the timing provision], the period of time within which a benefit determination on review is required to be made shall begin at the

---

[7] This provision describes a 60-day review period for non-disability claims, but 29 C.F.R. § 2650.503-1(i)(3)(i) provides that "claims involving disability benefits . . . shall be governed by paragraph (i)(1) of this section, except that a period of 45 days shall apply instead of 60 days for purposes of that paragraph." Because Ms. Holmes seeks disability benefits, we have inserted the applicable time limits into § 2560.503-1(i)(1).

[8] Ms. Holmes correctly observes the Defendant did not direct the district court to the tolling provision and the court did not consider it in reaching its decision. We apply the tolling provision despite the Defendant's failure to raise it below because in affirming a district court's decision, we are "'not limited to the particular legal theories advanced by the parties, but rather retain[] the independent power to identify and apply the proper construction of governing law.'" *Planned Parenthood of Kan. & Mid-Mo. v. Moser*, 747 F.3d 814, 837 (10th Cir. 2014) (quoting *U.S. Nat'l Bank v. Independent Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993)). *See also United States v. Lott*, 310 F.3d 1231, 1242 n.7 (10th Cir. 2002) (stating we may "'affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court'" (quoting *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994)).

time an appeal is filed in accordance with the reasonable procedures of a plan, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing. In the event that a period of time is extended as permitted pursuant to paragraph (i)(1), (i)(2)(iii)(B), or (i)(3) of this section due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

*Id.* § 2560.503-1(i)(4); *see generally Heimeshoff*, 134 S. Ct. at 613 (explaining the timing of the disability claims process under ERISA and recognizing that the time for review of an administrative appeal may be tolled due to a claimant's failure to provide information necessary to decide the claim). Thus, the running of the time limit for a decision on review is paused during the period of time between the administrator's request for additional information and the participant's response to that request. When the participant responds, the running of the time limit recommences and the plan administrator must render its decision before the time limit expires. If the plan administrator fails to do so, a participant is "deemed to have exhausted the administrative remedies." 29 C.F.R. § 2560.503-1(*l*).

Turning to the present facts, Ms. Holmes sought a first-level review of the initial denial of her claim for benefits on November 21, 2005. On the last day of its initial 45-day deadline, January 5, 2006, *see id.* § 2560.503-1(i)(1), Union Security notified Ms. Holmes that due to "special circumstances," additional time was required to complete the first-level review. The letter stated,

I am contacting you to notify you that we require an extension of time for processing your appeal for long-term disability benefits. Special circumstances exist that prevent me from rendering a decision on your

17

appeal currently. The following are the reasons why additional time is required to make a determination of your claim:

1. I forwarded Ms. Holmes'[s] claim file to a physician to determine her limitations. The physician consultant has completed the review of the available record and has suggested obtaining a complete set of medical records from Drs. Kinnard, Hunter and Beers prior to completing a determination. Please forward a copy of Ms. Holmes's medical records to our attention as soon as possible.

Aplt. App. 181. The letter concluded, "We expect to make this determination no later than February 26, 2006." *Id.* Ms. Holmes did not respond to this letter.

Union Security again wrote to Ms. Holmes on February 2, 2006. It reiterated that "special circumstances exist that prevent [it] from rendering a decision on Ms. Holmes'[s] appeal," and renewed its request for a complete set of medical records. *Id.* at 180. When it received no response, Union Security sent a third letter on February 24, 2006, which again explained that "special circumstances" prevented it from rendering a decision on Ms. Holmes's first-level review because a complete set of medical records was "necessary in order to establish [Union Security's] liability." *Id.* at 179. Union Security received no response to this letter until March 13, 2006, when Ms. Holmes provided it with the requested records.

Union Security's notice to Ms. Holmes prior to the termination of the initial 45-day period, indicating that "special circumstances" prevented it from rendering a decision on her first-level review and requesting a complete set of her medical records, tolled the running of the time for decision. *See* 29 C.F.R. § 2560.503-1(i)(1)(i), (3)(i). Once Ms. Holmes responded, the time limit again began to run and, in light of the extension, Union Security was required to render a decision on Ms. Holmes's first-level review within 45

18

days. *See id.* § 2560.503-1(i)(4). By providing a decision 25 days later on April 7, 2006, Union Security acted well within the period permitted by ERISA.

Ms. Holmes hopes to avoid application of the tolling provision because Union Security failed to establish that the requested records were, in fact, "necessary" to decide her claim. However, ERISA's regulations governing extensions of time and calculating time periods on review place with the plan administrator the sole discretion to determine whether special circumstances exist requiring an extension of time for decision. The regulations provide that a plan administrator must notify the claimant of the decision on review within 45 days unless "*the plan administrator determines*" special circumstances require an extension of time, and if "*the plan administrator determines*" such an extension is required, he need only furnish written notice of the extension to the claimant. *See id.* § 2560.503-1(i)(1)(i), (i)(4) (emphasis added); *see also McDowell v. Standard Ins. Co.*, 555 F. Supp. 2d 1361, 1369 (N.D. Ga. 2008) ("[The third-party claims administrator] has unilateral authority to begin tolling an extension period insofar as [the third-party claims administrator] has discretion to determine what 'necessary' information is lacking."). The tolling provision does nothing to limit that discretion. It simply explains how time is calculated if Union Security makes such a determination. *See* 29 C.F.R. § 2560.503-1(i)(4).

As the third-party claims administrator,[9] Union Security could determine that special circumstances required additional time to render a decision. Because of the broad

---

[9] Because the Policy, which the parties identify and the district court treated as the plan document, does not specifically identify a plan administrator, the Coalition is the

19

discretion placed in Union Security under the plan and ERISA's regulations, we review

that decision under the arbitrary and capricious standard. *Geddes v. United Staffing

Alliance Emp. Med. Plan*, 469 F.3d 919, 927 (10th Cir. 2006) ("If a plan administrator

has been allotted discretionary authority in the plan document, the decisions of both it

and its agents are entitled to judicial deference"); *Gilbertson v. Allied Signal, Inc.*, 328

F.3d 625, 630 (10th Cir. 2003) (stating that because the plan granted discretionary

authority to a third-party claims administrator, the claims administrator's "decisions on

benefit claims should generally be reviewed under the arbitrary and capricious

standard."). Ms. Holmes points us to nothing indicating Union Security's decision that it

needed her entire medical file to complete her claim evaluation was arbitrary or

capricious. *See Winchester v. Prudential Life Ins. Co. of Am.*, 975 F.2d 1479, 1483 (10th

Cir. 1992) ("Indicia of arbitrary and capricious conduct include lack of substantial

---

default plan administrator. *See* 29 U.S.C. § 1002(16)(A), (B) (providing that the "plan sponsor" means the employer and the "administrator" means "the person specifically so designated by the terms of the instrument under which the plan is operated; [or] if an administrator is not so designated, the plan sponsor"). However, the Policy specifically provides that the Coalition has delegated to Union Security the "sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the Policy." Aplt. App. 124, 145. Pursuant to this delegation, Union Security has the authority to administer claims for benefits and to determine benefits eligibility. *See, e.g.*, *Geddes v. United Staffing Alliance Emp. Med. Plan*, 469 F.3d 919, 926 (10th Cir. 2006) (recognizing a plan administrator's delegation of claims review authority to an independent, third-party claims agency as an appropriate exercise of fiduciary discretion); *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 630 (10th Cir. 2003) (approving a plan administrator's delegation of discretionary authority to determine benefits eligibility to a third-party claims administrator); *see also* 29 U.S.C. § 1105(c)(1) ("The instrument under which a plan is maintained may expressly provide for procedures . . . for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities . . . under the plan.").

20

evidence, mistake of law, bad faith, and conflict of interest."). Even weighing as a factor

Union Security's inherent conflict of interest as both the evaluator and payor of her

claim, there is no evidence Union Security acted in bad faith or otherwise improperly

sought to delay a decision on Ms. Holmes's internal appeal. *See Foster v. PPG Indus.,*

*Inc.*, 693 F.3d 1226, 1232 (10th Cir. 2012) (holding that a plan administrator operating

under an inherent conflict of interest had not abused its discretion). To the contrary,

although the regulations provided Union Security 45 days to complete its review after

Ms. Holmes responded to the request for records, it rendered its decision on review only

25 days later. Furthermore, Ms. Holmes had the power to end the tolling period and

recommence the running of the time for decision simply by responding to Union

Security's request, even if the response was a refusal to provide the documents. *See* 29

C.F.R. § 2560.503-1(i)(4).

The deadline for a decision on Ms. Holmes's first-level of internal review was

tolled until she responded to Union Security's request for additional medical records.

Once the period recommenced, Union Security completed its review before the time limit

expired. Therefore, Ms. Holmes cannot be deemed to have exhausted her administrative

remedies on the basis that Union Security did not comply with ERISA's timing

regulations.[10]

---

[10] Because we conclude that Union Security actually complied with the ERISA time limits for rendering a decision on review, we need not consider the Defendant's argument that Union Security substantially complied with ERISA's timing requirements. *Compare Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073, 1080 (9th Cir. 2011) (holding that a participant was deemed to have exhausted administrative remedies because the plan failed to comply with ERISA's timing regulations), *and Nichols v.*

21

## 2.    ERISA's Notice and Disclosure Requirements

According to Ms. Holmes, even if Union Security's decision on her first-level review was timely, she should nonetheless be deemed to have exhausted her administrative remedies because the SPD failed to comply with ERISA's notice and disclosure requirements. We begin our analysis of this argument by identifying the relevant notice and disclosure requirements under ERISA. Next, we review the SPD to determine whether it complies with those requirements. In making that assessment, we assume for purposes of analysis only that the district court correctly incorporated the Denial Review Procedure into the SPD by reference. Finally, we address whether any deficiencies in the SPD warrant excusing Ms. Holmes from exhausting her administrative remedies. We conclude the SPD does not meet ERISA's notice and disclosure requirements, but Ms. Holmes was not prejudiced by those deficiencies. As a result, we hold she is not deemed to have exhausted her administrative remedies.

Benefit plans regulated by ERISA are required to "establish and maintain reasonable claims procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations." 29 C.F.R. § 2560.503-1(b). If a claim is denied, plans must "provide adequate notice in writing to

---

*Prudential Ins. Co. of Am.*, 406 F.3d 98, 106–08 (2d Cir. 2005) (rejecting a plan's argument that it substantially complied with ERISA's timing requirements and holding that a "failure to adhere literally to the regulatory deadlines renders the claimant's administrative remedies exhausted by operation of law and consequently permits the claimant to seek review in the federal courts without further delay"), *with Tindell v. Tree of Life, Inc.*, 672 F. Supp. 2d 1300, 1310–12 (M.D. Fla. 2009) (holding that administrative remedies were not deemed exhausted where the plan substantially complied with ERISA's timing deadlines).

any participant or beneficiary whose claim for benefits under the plan has been denied . . . and . . . afford a reasonable opportunity . . . for a full and fair review . . . of the decision denying the claim." 29 U.S.C. § 1133. To effectuate that requirement, ERISA further provides that a claim denial notice shall contain a "description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action . . . following an adverse benefit determination on review." 29 C.F.R. § 2560.503-1(g)(1)(iv). Here, there is no dispute that the claim denial letters included the Denial Review Procedure, which described a two-level internal review and advised participants of their right to pursue a civil action after completing the second-level review.

In addition to the requirements affecting the contents of the plan and claim denial letters, ERISA mandates that plan administrators provide participants with a summary plan description. 29 U.S.C. §§ 1002(21)(A), 1021(a), 1022, 1024; *CIGNA Corp. v. Amara*, ___ U.S. ___, 131 S. Ct. 1866, 1877 (2011). The summary plan description must set forth the plan's policies "in a manner calculated to be understood by the average plan participant" and be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). The summary plan description's format may not mislead or fail to inform participants about the plan, and limitations or restrictions must not be "minimized, rendered obscure or otherwise made to appear unimportant." 29 C.F.R. § 2520.102-2(b). Of particular relevance here, the summary plan description must contain "[t]he procedures governing claims for benefits (including procedures for . . . reviewing denied

23

claims . . .), applicable time limits, and remedies available under the plan for the redress of claims which are denied in whole or in part." *Id.* § 2520.102-3(s).

If a plan fails to "establish and follow reasonable claims procedures," the claimant is "deemed to have exhausted the administrative remedies available under the plan" and is entitled to bring a civil action "on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." *Id.* § 2560.503-1(*l*). A claims procedure is reasonable only if "[a] description of all claims procedures . . . and the applicable time frames is included as part of a summary plan description." *Id.* § 2560.503-1(b)(2). Ms. Holmes contends that the SPD does not contain a description of the second-level review, the plan's claims procedure is therefore unreasonable, and she is deemed to have exhausted her administrative remedies on this basis. We are not convinced Ms. Holmes's failure to exhaust should be excused by deficiencies in the SPD.

### a. The SPD does not comply with ERISA.

We agree with Ms. Holmes that the SPD does not comply with ERISA. Before we address its deficiencies, we pause to identify the document in the record that constitutes the SPD. Union Security provided plan participants with the SPD in a Group Benefits booklet (the Booklet), which also includes an abbreviated version of the Policy. The copy of the double-sided Booklet in the Administrative Record was made without unbinding it, resulting in two pages of the Booklet appearing on each page in the record. The record copies of the Booklet pages are not in sequential order. For purposes of the argument before the district court and on appeal, neither Ms. Holmes nor the Defendant have

24

addressed the provisions in the Booklet as they appear when it is properly collated so that the pages run sequentially from 1 through 41. That simple task produces a document which clearly delineates between the abbreviated version of the Policy found at the beginning of the Booklet and the expressly identified "Summary Plan Description" which follows on pages 35 through 41.[11] Our analysis is of the SPD identified as such in the Booklet.

The SPD describes only one level of internal review. It contains a section with the heading "Claims Procedure," which states, "The following procedures apply to the extent benefits under your employee benefit plan are insured under a contract issued by [Union Security]." Aplt. App. 159; attachment, p. 40. Under the sub-heading "Notification of Decision—Disability," the SPD provides the time limits for a decision on an initial claim for benefits and then indicates that the plan administrator will provide written notice to the claimant "if the claim is denied in whole or in part," which will include "[a]n explanation of the plan's claim review procedure." Aplt. App. 159; attachment, p. 40. Thus, the SPD alerts participants that with a claim denial letter they will also receive information about the plan's review procedures.

The Claims Procedure section of the SPD also contains a sub-heading "Review Procedure—Disability" (SPD Review Procedure), which states with our emphasis:

> You are entitled to a full and fair review of denial of claim. You may make a request to the Plan Administrator or appropriate named fiduciary, if other than the Plan Administrator. *The procedure is as follows:*

---

[11] A properly organized copy of the Booklet is included as an attachment to this decision.

. . .

> [Union Security] will make a decision upon review within 45 days after receipt of the request unless special circumstances require an extension of time for processing in which case the time limit shall not be later than 90 days after receipt. The decision or review will be in writing, include the specific reasons for the decision and specific reference to the pertinent plan provisions on which the decision is based and be furnished either directly to you or to the Plan Administrator for delivery to you.

Aplt. App. 158; attachment, p. 41. This subsection is narrowly tailored to the review of disability claims and describes only one level of internal review.

Taken together, these provisions of the SPD fail to inform participants accurately of their internal review rights. Although the section of the SPD addressing the "Notification of Decision—Disability" indicates that the denial of the *initial claim* for benefits will include "[a]n explanation of the plan's claim review procedure," there is nothing in the SPD which indicates the description of the review procedure for disability claims is incomplete or that after the described first-level review, the claimant may be informed of additional appeal rights. Furthermore, unlike the Policy, the SPD does not indicate that Union Security will advise participants of "further appeal rights, if any," in its decision on a first-level review.[12] As a result, the SPD does not adequately inform participants of the second-level of internal review authorized by the plan and contained in the Denial Review Procedure.

---

[12] The abbreviated copy of the Policy included in the Booklet states, "we will also advise you of your further appeal rights, if any." Aplt App. 167; attachment, p. 31. Contrary to the parties' representations, this language does not appear in the SPD. *See* attachment, pp. 35–41.

Relying on *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620 (9th Cir. 2008), the district court held this deficiency was cured because the Denial Review Procedure was incorporated by reference into the SPD. In *Vaught*, the Ninth Circuit held a summary plan description's statement that "'a description of the plan's appeal procedures'" would be included with the claim denial letters was effective to incorporate those appeal procedures into the summary plan description, bringing it into compliance with ERISA's notice requirements. *Id.* at 627. Here, unlike in *Vaught*, even if we assume, without deciding, that the Denial Review Procedure was incorporated by reference,[13] it does not cure the SPD's deficiencies.

In *Vaught*, the summary plan description made no attempt to describe the claims review procedure, stating only that the plan's appeal procedures would be provided with the denial letters. In contrast, the Denial Review Procedure in the present case adds a second level of review that seems to conflict with the one level of disability review described in the SPD. As a result, even if the Denial Review Procedure were incorporated

---

[13] A document, even one that is not contemporaneous, may be incorporated by reference into a contract so long as "the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt." 11 Williston on Contracts § 30:25 (4th ed.) (citing federal law). *Compare Armstrong v. Fed. Nat'l Mortg. Ass'n*, 796 F.2d 366, 371 (10th Cir. 1986) (upholding incorporation by reference of a specifically identified "Servicing Contract Supplement," including subsequent amendments thereto), *with Pontchartrain State Bank v. Poulson*, 684 F.2d 704, 706 (10th Cir. 1982) (holding that a list of the debtor's equipment was not incorporated by reference into a security agreement and stating, "the doctrine of incorporation by reference is not applicable in this case because the promissory note makes no reference to the list.").

into the SPD, it does not reasonably apprise participants of the plan's review procedures as required by ERISA.[14] 29 U.S.C. § 1022(a); 29 C.F.R. § 2520.102-2(b).

### b. Ms. Holmes has not established prejudice.

Based on the SPD's failure to describe the second-level review, Ms. Holmes argues she is deemed to have exhausted her administrative remedies. Because she has not alleged these deficiencies caused her failure to pursue a second-level review, we disagree.

As this circuit has previously recognized, "Courts have . . . been willing to overlook [an] administrator['s] failure to meet certain procedural requirements when the administrator has substantially complied with the regulations and the process as a whole fulfills the broader purposes of ERISA and its accompanying regulations." *Gilbertson*, 328 F.3d at 634. Accordingly, we have excused deviations from ERISA's notice requirements so long as the claimant has not been prejudiced thereby. *See Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1295 (10th Cir. 2011) (recognizing that to obtain injunctive relief, the plaintiff would be required to show actual harm from the plan's breach of ERISA's requirement that the summary plan description reasonably apprise the

---

[14] The Defendant asks us to ignore this discrepancy because the statement in the "Claim Provisions" of the Policy, "we will also advise you of your further appeal rights, if any," put plan participants on notice that a second-level of internal review may be required. However, ERISA mandates that the SPD itself be "sufficiently accurate and comprehensive to reasonably apprise [plan] participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). "The regulations further provide that an SPD must not be 'misleading' and should not 'minimize[ or] render[] obscure' other restrictions on benefits." *Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1294 (10th Cir. 2011) (alteration in original) (quoting 29 C.F.R. § 2520.102-2(b)). The SPD, even as supplemented by the Denial Review Procedure, does not meet this standard.

participants of their rights and obligations under the plan); *Hickman v. GEM Ins. Co.*, 299

F.3d 1208, 1215 (10th Cir. 2002) (stating that "[s]ubstantial compliance with the

requirements of § 1133 [ERISA's claim denial notice provision] is sufficient," so long as

the violation does not cause the claimant a "substantive harm"); *Getting v. Fortis Benefits*

*Ins. Co.,* 5 F. App'x 833, 835 (10th Cir. 2001) (unpublished)[15] (declining to excuse

failure to exhaust where a plan participant claimed she was not provided with a copy of

the summary plan description but did receive claim denial letters that included a copy of

the review procedures, which she and her attorney followed in filing her first internal

appeal).[16]

---

[15] Although not precedential, we find the reasoning of this court's unpublished opinions instructive. *See* 10th Cir. R. 32.1 ("Unpublished opinions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

[16] Other circuits have also required claimants to establish prejudice caused by a plan administrator's failure to comply with ERISA's notice and disclosure requirements. *See, e.g.*, *Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 493 (D.C. Cir. 1998) (holding that although an administrator failed to provide a claimant with notice of her right to appeal in its initial denial letter, it substantially complied with ERISA regulations where the claimant was informed of her right to appeal in subsequent communications and the claimant could not show that she was prejudiced by the claims procedure or denied a fair administrative review); *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1278–79 (5th Cir. 1990) (rejecting a claimant's argument that because he was not provided with a summary plan description he was not bound by internal review procedures where he did not claim the absence of the summary plan description prejudiced his ability to obtain plan benefits); *cf. Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 180 (2d Cir. 2013) ("[P]lan participants will not be required to exhaust administrative remedies where they reasonably interpret the plan terms not to require exhaustion and do not exhaust their administrative remedies *as a result*." (emphasis added)); *Conley v. Pitney Bowes*, 34 F.3d 714, 718–19 (8th Cir. 1994) (holding that exhaustion was not required when a claim denial notice did not advise the claimant of the appeal procedure and the claimant had no actual knowledge of that procedure).

The Defendant seeks a similar result here, relying on the reasoning of *Perrino v. Southern Bell Telephone & Telegraph Co.*, 209 F.3d 1309 (11th Cir. 2000), in which the Eleventh Circuit explained, "it makes little sense to excuse plaintiffs from the exhaustion requirement where an employer is technically noncompliant with ERISA's procedural requirements but . . . the plaintiffs still had a fair and reasonable opportunity to pursue a claim through an administrative scheme prior to filing suit in federal court." *Id.* at 1318. Ms. Holmes claims we should not rely on *Perrino* or similar cases because they were decided before the ERISA regulations were amended to include 29 C.F.R. § 2560.503-1(*l*)'s deemed-exhausted provision.[17] She suggests strict application of the deemed-exhausted provision is now mandated, even where a claimant is not prejudiced by technical violations of ERISA's notice and disclosure requirements. We disagree.

Limiting the application of the deemed-exhausted provision to instances where technical noncompliance with ERISA's notice and disclosure requirements has prejudiced the claimant's right to enjoy a reasonable claims procedure is consistent with the express language of the regulation, which provides that:

> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue [a civil action] *on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.*

[17] The Department of Labor amended the regulations implementing ERISA in 2000 and added both the tolling provision and the deemed exhausted provision. Employee Retirement Income Security Act of 1974; Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. 70246-01, 70246, 70250, 70255 (Nov. 21, 2000); *see* 29 C.F.R. § 2560.503-1(i)(4), (*l*).

29 C.F.R. § 2560.503-1(*l*) (emphasis added).[18] Under the provision, the right to pursue a civil action without first exhausting the claims procedures provided by the plan is tied to the plan's failure to provide a reasonable claims procedure.

Since the deemed-exhausted provision's effective date, the courts have been charged with interpreting this language on a case-specific basis. Although this circuit has not had prior occasion to consider application of the deemed-exhausted provision to violations of ERISA's notice and disclosure requirements, other circuits have consistently limited its application to situations where such violations prejudice claimants by denying them a reasonable review procedure.[19] *See, e.g.*, *Schorsch v. Reliance Standard Life Ins.*

---

[18] By adopting § 2560.503-1(*l*), the Department of Labor intended to clarify "the consequences that ensue when a plan fails to provide procedures that meet the requirements of [the ERISA regulations]." Employee Retirement Income Security Act of 1974; Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. at 70255. The Department published a draft of the provision during the rulemaking process and received comments expressing concern that the provision "would impose unnecessarily harsh consequences on plans that substantially fulfill the requirements of the regulation, but fall short in minor respects." *Id.* Some commentators requested that the proposed rule be tempered with a good faith exception or a requirement of actual harm to the claimant. *Id.* at 70256. The final version of the amended regulations retained the deemed-exhausted provision because "Claimants should not be required to continue to pursue claims through an administrative process that does not comply with the law." *Id.* It therefore determined that "*claimants denied access to the statutory administrative review process* should be entitled to take that claim to a court . . . for a full and fair hearing on the merits of the claim." *Id.* (emphasis added).

[19] Indeed, the Eleventh Circuit recently reaffirmed *Perrino* in an unpublished decision, holding that the claimant was required to exhaust his administrative remedies, despite technical deficiencies in a denial notice, where the deficiencies did not deprive the claimant of a reasonable claims procedure. *See McCay v. Drummond Co.*, 509 F. App'x 944, 947 & n.1, 948 (11th Cir. 2013) (unpublished). The Eleventh Circuit concluded that even under the "new" regulations, a claimant will be deemed to have exhausted his administrative remedies only where "'the plan has failed to provide a

31

*Co.*, 693 F.3d 734, 739, 740–41 (7th Cir. 2012) (holding a claimant could not be deemed to have exhausted her administrative remedies despite "irregularities" in the plan's benefits termination process, where participant could not show how these problems caused her not to seek internal review); *Chorosevic v. MetLife Choices*, 600 F.3d 934, 944 (8th Cir. 2010) (holding participant could not be deemed to have exhausted her administrative remedies where "the ERISA plan's actions or omissions [did not] deprive the claimant of information or material necessary to prepare for administrative review or appeal to federal courts"); *cf. Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1089 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 1242 (2013) (deeming the claimant to have exhausted administrative remedies where claimant actually "misconstrued a confusingly worded communication from her plan's claims administrator" to her detriment); *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221–23 & n.10 (2d Cir. 2006) (holding that a claimant was deemed to have exhausted his administrative remedies where "there was no compliance, substantial or otherwise, with ERISA's claim requirements," but declining to decide whether the deemed-exhausted provision would apply "where existing claims procedures comply substantially with the requirements of ERISA"); *see also Amara*, 131 S. Ct. at 1881–82 (discussing the harm required to bring a civil enforcement claim under ERISA for failure of the summary plan description to reasonably apprise participants of plan requirements and concluding that although the claimant may not need to show detrimental reliance on the deficient

reasonable claims procedure that would yield a decision on the merits of the claim.'" *Id.* at 947 n.1.

summary plan description, she must establish actual harm); *Tomlinson*, 653 F.3d at 1293 n.10 ("[T]he Supreme Court recently altered the required showing of prejudice for some ERISA claims, but even under this new, more lenient standard, 'actual harm must be shown.'" (quoting *Amara*, 131 S. Ct. at 1882)).We agree that the deemed-exhausted provision is limited to instances in which the notice and disclosure deficiencies actually denied the participant a reasonable review procedure.[20]

Here, Ms. Holmes has not alleged that she lacked notice of the two-level internal review process, that she was confused about the review process, or that she reasonably believed seeking a second-level review was merely voluntary. Nowhere in the briefing before this court or the district court does Ms. Holmes explain how Union Security's failure to describe the second-level review in the SPD caused her not to follow the review process as described in the Denial Review Procedure, which Union Security provided to her on two occasions, and which she and her attorney followed in seeking a first-level

---

[20] Recent guidance from the Department of Labor is consistent with this approach. Answers to frequently asked questions about ERISA published by the Department state,

> *[n]ot every deviation by a plan from the requirement of the regulation justifies proceeding directly to court. . . .* If the plan's procedures provide an opportunity to effectively remedy the inadvertent deviation *without prejudice to the claimant*, through the internal appeal process or otherwise, then *there ordinarily will not have been a failure to establish or follow reasonable procedures* as contemplated by § 2560.503-1(*l*).

U.S. Dep't of Labor, Employee Benefits Security Administration, FAQs About The Benefit Claims Procedure Regulation, FAQ F-2, http://www.dol.gov/ebsa/faqs/faq_ claims_proc_reg.html (last visited July 7, 2014) (emphasis added); *see Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 223 n.10 (2d Cir. 2006) (citing the Department of Labor's FAQ section for the position that "'not every deviation by a plan from the requirement of the regulation justifies proceeding directly to court.'").

review. *See Getting*, 5 F. App'x at 836. Similarly, she has not alleged that the claims procedure itself was unreasonable or that the deficient SPD prevented her from obtaining a decision on the merits of her claim.[21]

Because Union Security's failure to include the details regarding the two-level internal review process in the SPD did not prejudice Ms. Holmes by denying her a fair and reasonable opportunity to pursue her claim through the plan's internal review process, the district court correctly rejected her argument that she should be deemed to have exhausted her administrative remedies based on deficiencies in the SPD.

### III. CONCLUSION

The plan document authorized the further appeal procedures described in the Denial Review Procedure and they are enforceable against Ms. Holmes. Union Security rendered a timely decision on Ms. Holmes's first-level review and the SPD's failure to describe the second-level review did not prejudice Ms. Holmes. As a result, Ms. Holmes was required to exhaust her administrative remedies before filing this action. The district court correctly determined that she failed to exhaust those remedies by not pursuing a second-level review.

For the foregoing reasons, we **AFFIRM** the district court's decision that Ms. Holmes's claim under ERISA is barred.

---

[21] It is not unreasonable for a plan to require two levels of mandatory internal review. 29 C.F.R. § 2560.503-1(c)(2), (c)(3), (d); *Price v. Xerox Corp.*, 445 F.3d 1054, 1056 (8th Cir. 2006).